IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

EVANSTON INSURANCE COMPANY,    )    CIVIL NO. 11-00666 LEK-KSC
an Illinois Corporation,       )
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
ERIC NAGANO, HIROKO NAGANO,    )
PMX, INC., a Hawaii            )
Corporation, and HC BUILDERS   )
LLC, a Hawaii Limited          )
Liability Company,             )
                               )
          Defendant.           )
_____)


## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

          Before the Court is Plaintiff Evanston Insurance

Company's ("Evanston") Motion for Summary Judgment ("Motion"),

filed on March 29, 2012.  Defendants Eric Nagano, Hiroko Nagano,

PMX, Inc. ("PMX"), and HC Builders LLC ("HC", all collectively

"Defendants") filed their memorandum in opposition on June 29,

2012, and Evanston filed its reply on July 9, 2012.  This matter

came on for hearing on July 23, 2012.  Appearing on behalf of

Evanston was Bradford Bliss, Esq., and appearing on behalf of

Defendants was Kevin Herring, Esq.  Defendants Eric Nagano and

Hiroko Nagano were also present.  After careful consideration of

the Motion, supporting and opposing memoranda, and the arguments

of counsel, Evanston's Motion is HEREBY GRANTED for the reasons

set forth below.

Evanston filed its Complaint for Declaratory Relief ("Complaint") on October 31, 2011. The Complaint seeks a judicial determination that Evanston has no duty to defend or indemnify Defendants in <u>Frederick M.C. Hu & Marie G. Hu v. Eric Nagano & Hiroko M. Nagano</u>, Civil No. 11-1-1412-07, Circuit Court of the First Circuit, State of Hawai`i ("<u>Hu v. Nagano</u>"), and in an arbitration proceeding before Dispute Prevention & Resolution ("DPR") titled <u>Frederick M.C. Hu & Marie G. Hu v. PMX, Inc. & HC Builders, LLC</u> ("<u>Hu v. PMX</u>"). The parties to those proceedings, however, subsequently agreed to consolidate the claims in <u>Hu v. PMX</u> with the claims in <u>Hu v. Nagano</u>. Thus, the Hus' First Amended Complaint in <u>Hu v. Nagano</u> ("Hu Complaint") also names PMX and HC as Defendants. Other than that change, the Hu Complaint is identical to the Hus' original complaint.[1] [Decl. of Bradford F.K. Bliss, filed 7/24/12 (dkt. no. 25), at ¶ 4; Exh. 1 (Hu Complaint).]

---

[1] Evanston's Motion addressed the original complaint in <u>Hu v. Nagano</u>, as well as the arbitration demand in <u>Hu v. PMX</u>. At the hearing on the Motion, the Court gave Evanston leave to submit a copy of the First Amended Complaint in <u>Hu v. Nagano</u>, which the Hus filed after Evanston filed the instant Motion in this case. Insofar as the claims in that complaint are identical to the claims in the Hus' original complaint, except that the Hus have now named PMX and HC as defendants in <u>Hu v. Nagano</u>, and insofar as Evanston's Motion addressed the arbitration demand which alleged almost identical claims against PMX and HC, the Court construes Evanston's arguments in the Motion as addressing the First Amended Complaint in <u>Hu v. Nagano</u>.

# I.  __Factual Background__

Evanston issued two general liability insurance policies to PMX that were in effect from November 11, 2002 through November 11, 2004.  [Evanston's Concise Statement of Facts in Supp. of Motion, filed 3/29/12 (dkt. no. 19) ("Evanston CSOF"), at ¶ 4 (citing Complaint, Exhs. A & B); Defs.' Separate Concise Statement in Opp. to Motion, filed 6/29/12 (dkt. no. 22) ("Defs.' CSOF"), at 2 (admitting ¶ 4 of Evanston CSOF).[2]] Defendant Eric Nagano was the principal and owner of PMX prior to its dissolution.  [Defs.' CSOF, Decl. of Eric Nagano ("Nagano Decl."), at ¶ 3.]

Evanston issued six general liability insurance policies to HC that were in effect from January 18, 2005 through January 18, 2011.  [Evanston CSOF at ¶ 5 (citing Complaint, Exhs. C-H); Defs.' CSOF at 2 (admitting ¶ 5 of Evanston CSOF).] Defendant Hiroko Nagano is Eric Nagano's wife, and she is the principal of HC.  [Nagano Decl. at ¶ 4.]

The Hu Complaint alleges that: Eric Nagano held a contractor's license from approximately June 1993 until it was revoked in approximately March 2006; and Hiroko Nagano has held an active contractor's license since approximately September 2006.  [Hu Complaint at ¶¶ 3, 6.]  The Hus allege that there is

---

[2] The individual statements of fact in Defendants' CSOF are unnumbered.

"sufficient unity of interest" among Defendants to consider them
"one and the same, and the 'alter ego' of each other with respect
to their obligations and duties" to the Hus and the claims in Hu
v. Nagano. [Id. at ¶ 8.] Further, the Hus allege that
Defendants are jointly and severally liable for the Hus' damages.
[Id. at ¶ 9.]

On or about December 2, 2002, the Hus and PMX entered
into a contract for the construction of a residence ("the
Construction Contract") at 2263 Okoa Street, Honolulu, Hawai`i
96821 ("the Project").[3]  The Hus agreed to pay PMX $440,000 for
its full performance under the Construction Contract.  The
Construction Contract provided, *inter alia*, that construction was
to commence within five days after the Hus provided authorization
to commence construction, and construction was to be completed
within 220 days from the authorization to commence construction.
On or about July 1, 2003, the Hus provided Eric Nagano and PMX
with a letter to proceed with construction.  The letter informed
Eric Nagano and PMX that the construction period for the Hus'
construction loan could not exceed twelve months after July 1,
2003, and exceeding that period would cause the Hus to incur
substantial costs and expenses.  [Id. at ¶¶ 10, 13-15.]

_____

[3] The Construction Contract is attached to the Hu Complaint
as Exhibit A.

4

Construction did not commence until approximately October 2004 and, even after commencement, there were numerous delays resulting in months of inactivity on the Project. During the construction period, the Hus' community association fined them because of the prolonged construction and the Hus' construction lender assessed extension fees and fines for exceeding the term of the loan. [Id. at ¶¶ 16-19.]

After the revocation of Eric Nagano's contractor's license, he presented the Hus with a letter agreement authorizing HC to take over the contract with Hiroko Nagano acting as general contractor. In conjunction with that letter agreement, Defendants represented that they would assume all of PMX's obligations under the Construction Contract.[4] The letter agreement was filed with the City and County of Honolulu, Department of Planning and Permitting ("DPP") on or about June 8, 2006. The Hus allege that Hiroko Nagano did not have a contractor's license at that time. Thus, there was no licensed contractor on the Project from March 2006 to September 2006. Eric Nagano later presented Frederick Hu with another letter agreement authorizing Frederick Hu as owner-builder to replace HC as the contractor for the Project. The Hus signed the letter agreement based on Eric Nagano's representation that Defendants

_____

[4] According to the Hu Complaint, PMX was involuntarily dissolved in or about June 2008. [Hu Complaint at ¶ 37.]

would immediately resume construction and would complete the Project within two months. That letter agreement was filed with the DPP on or about July 25, 2006. [Id. at ¶¶ 20-27, 29-30.]

The Hus allege that Defendants did not fulfill the obligations under the Construction Contract. Further, the Project was "grossly delayed" and the construction was "riddled with defects." [Id. at ¶ 31.] The Hus also allege that Defendants abandoned the Project "after repainting less than one-third of the home's mud-stained, stucco exterior[.]" [Id.] According to the Hu Complaint, HC fraudulently published an Owner's Notice of Completion for the Project on or about December 4, 2007, and the notice was filed in state court or about December 19, 2007. Defendants represented to the Hus that the construction was substantially complete. The Hus allege that, when they moved in on or about March 1, 2008, the residence was not usable because it had no electricity, no hot water, and no installed appliances. Further, parts of the flooring were either missing or incomplete. The Hus state that, on or about June 29, 2008, Eric Nagano acknowledged that Defendants had not fulfilled the obligations under the Construction Contract and that Defendants lacked the funds to do so. As a result, the Hus were forced to either perform work themselves or pay third parties for services they paid Defendants to provide. [Id. at ¶¶ 32-36, 38-39.]

The Hus also allege that, after they moved into the residence, "the first floor of the house flooded during several rainstorms as a result of the defective construction by [Defendants] on the second floor of the house." [Id. at ¶ 41.] The Hus incurred expenses for materials and labor to replace or repair numerous types of defective construction on the Project. They also allege that, as a result of Defendants' defective construction, their staircase and balcony are unsafe and there are severe humps in the hardwood floors. [Id. at ¶¶ 42-45.]

The Hu Complaint alleges the following claims: breach of contract ("Count I"); breach of warranties ("Count II"); breach of the covenant of good faith and fair dealing ("Count III"); fraud related to the letter agreement authorizing Frederick Hu to take over the Project as the owner-builder ("Count IV"); fraud related to publication and filing of the Owner's Notice of Completion for the Project ("Count V"); unjust enrichment ("Count VI"); promissory estoppel ("Count VII"); and unfair and deceptive business practices ("Count VIII"). The Hus therefore seek: general, special, actual, consequential, and incidental damages; treble or punitive damages; reasonable attorneys' fees and costs; and any other appropriate relief.

Eric Nagano and Hiroko Nagano (collectively "the Naganos") tendered the defense in Hu v. Nagano to Evanston under the two policies issued to PMX and the six policies issued to HC.

Evanston has provided a defense, but Defendants allege the
defense is limited because Evanston: allowed default to be
entered against the Naganos (the default was later set aside);
delayed retaining experts; and limited the ability of the
Naganos' retained counsel to perform necessary actions to advance
the case.  [Nagano Decl. at ¶¶ 9-10.]

**II.  <u>Motion</u>**

In the instant Motion, Evanston argues that it does not
have a duty to defend or indemnity Defendants against the Hus'
claims because: none of the claims "constitute 'property damage'
caused by an 'occurrence' as those terms are defined in the
applicable insurance polices[;]" and the policies' exclusions of
claims arising from a breach of contract preclude coverage for
all of the Hus claims.  [Mem. in Supp. of Motion at 1-2.]

Evanston emphasizes that the Hu Complaint alleges
numerous breaches of the Construction Contract and numerous
defects in the construction of the Hus' residence, but the Hu
Complaint does not allege any claims sounding in negligence.  All
of the claims arise from Defendants' alleged intentional conduct.
[<u>Id.</u> at 4-6.]

Evanston points out that the insuring language in each
of the six policies is contained in Commercial General Liability
Coverage Form CG 0001, [<u>id.</u> at 7,] which states, in pertinent
part:

1.    Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

        . . . .

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2)    The "bodily injury" or "property damage" occurs during the policy period.

[Complaint, Exh. A (PMX Policy No. CL020200357) at 23;[5] Exh. B (PMX Policy No. CL520101232) at 22; Exh. C (HC Policy No. CL520101756) at 13; Exh. D (HC Policy No. CL520102195) at 12; Exh. E (HC Policy No. CL520102551) at 12; Exh. F (HC Policy No. CL520102881) at 14; Exh. G (HC Policy No. CL520103143) at 14;

---

[5] Each policy as a whole consists of numerous separate documents, and each policy is not consecutively paginated.  The page numbers in the Court's citations to the policies refer to the exhibits' page numbers in the district court's cm/ecf system.

Exh. H (HC Policy No. CL520103383) at 22.[6]]

The Policies include the following relevant

definitions:

> 13. "Occurrence" means an accident, including
> continuous or repeated exposure to
> substantially the same general harmful
> conditions.
>
> . . . .
>
> 17. "Property damage" means:
>
> > a. Physical injury to tangible property,
> > including all resulting loss of use of
> > that property. All such loss of use
> > shall be deemed to occur at the time of
> > the physical injury that caused it; or
> >
> > b. Loss of use of tangible property that is
> > not physically injured. All such loss
> > of use shall be deemed to occur at the
> > time of the "occurrence" that caused it.
>
> 18. "Suit" means a civil proceeding in which
> damages because of "bodily injury", "property
> damage" or "personal and advertising injury"
> to which this insurance applies are alleged.
> "Suit" includes:
>
> > a. An arbitration proceeding in which such
> > damages are claimed and to which you
> > must submit or do submit with our
> > consent[.]

[Id., Exh. A at 33; Exh. B at 33-34; Exh. C at 23-24; Exh. D at

---

[6] The Court will collectively refer to PMX Policy No.
CL020200357 and PMX Policy No. CL520101232 as "the PMX Policies,"
and the Court will collectively refer to HC Policy No.
CL520101756, HC Policy No. CL520102195, HC Policy No.
CL520102551, HC Policy No. CL520102881, HC Policy No.
CL520103143, and HC Policy No. CL520103383 as "the HC Policies."
The Court will refer to all eight policies collectively as "the
Policies."

22-23; Exh. E at 22-23; Exh. F at 24-25; Exh. G at 24-25; Exh. H
at 35-36.]

Evanston argues that, under these terms and
definitions, none of the Hus' claims are covered under the
Policies.  Evanston also urges the Court to follow Group
Builders, Inc. v. Admiral Insurance Co., 123 Hawai`i 142, 148-49,
231 P.3d 67, 73-74 (Ct. App. 2010), which Evanston argues held
that a construction defect claim is not an "occurrence" under a
commercial general liability ("CGL") policy and therefore breach
of contract claims, as well as derivative tort claims based on
alleged construction defects, are not covered under such
policies.  [Mem. in Supp. of Motion at 9.]  Evanston also notes
that this district court and the Ninth Circuit have reached the
same conclusion, and Group Builders cited both of those cases
with approval.  [Id. at 10 (discussing WDC Venture v. Hartford
Accident & Indem. Co., 938 F. Supp. 671, 677 (D. Hawai`i 1996);
Burlington Ins. Co. v. Oceanic Design & Constr. Inc., 383 F.3d
940, 946 (9th Cir. 2004)).]  Evanston urges the Court to grant
the Motion and to conclude that the Hus' claims are not covered
under the Policies pursuant to the logic and reasoning in those
three cases.  [Id. at 11-12.]

Although Evanston asserts that the foregoing is a
sufficient ground to grant the Motion, Evanston also argues that
the Policies contain explicit exclusions of breach of contract

11

claims.[7]  [Id. at 12.]

The PMX Policies contain the following Breach of

Contract Exclusion:

> This insurance does not apply to claims for breach
> of contract, whether express or oral, nor claims
> for breach of an implied in law or implied in fact
> contract, whether "bodily injury," property
> damage," "advertising injury," "personal injury"
> or an "occurrence" or damages of any type is
> alleged; this exclusion also applies to any
> additional insureds under this policy.
>
> Furthermore, no obligation to defend will arise or
> be provided by us for such excluded claims.

[Complaint, Exh. A at 13, Exh. B at 39.]

Four of the HC Policies contain the following exclusion

in the Combination General Endorsement, MSU-001 (06/04):

> 9.   Breach of Contract Exclusion is added to
>      Coverage A, Section I, Commercial General
>      Liability Coverage Form
>
>      This insurance does not apply to liability
>      for breach of contract.  This exclusion also
>      applies to any additional insureds under this
>      policy.

[Id., Exh. C at 31, Exh. D at 30, Exh. E at 29, Exh. F at 33.]

The other two HC Policies contain the following exclusion: "This

insurance does not apply to claims arising out of breach of

contract, whether written or oral, express or implied, implied-

in-law, or implied-in fact [sic] contract."  [Id., Exh. G at 34,

---

[7] Evanston argues that other exclusions in the Policies also
apply, and Evanston emphasizes that it is not waiving its
position as to the other exclusions.  [Mem. in Supp. of Motion at
12 n.1.]

Exh. H at 11.]

Evanston argues that all of the Hus' claims "clearly
have their origin in the contract between PMX, Inc. and the Hus
for construction of their home." [Mem. in Supp. of Motion at
13.] Evanston therefore argues that, pursuant to the analysis in
Group Builders, WDC Venture, and Burlington, this Court should
grant the Motion and conclude that none of the Hus' claims are
covered under the Policies. [Id. at 13-14.]

### A.  Defendants' Memorandum in Opposition

In their memorandum in opposition, Defendants emphasize
that PMX purchased the first policy before entering into the
Construction Contract. [Mem. in Opp. at 2.] Eric Nagano states
that one of the primary reasons he purchased the Policies was
because it was his understanding that CGL policies covered
construction defect claims. He also states that Evanston
provided it with defense and indemnity coverage for two other
construction defect claims during the period in which the
Policies were in effect. [Nagano Decl. at ¶¶ 12-13.]

Construction began on the Project in 2003, but the Hus
thereafter made at least thirty-three significant change orders,
which increased the cost of the Project by $191,000.00. [Id. at
¶¶ 17, 19.] Eric Nagano also states that the Project was delayed
by the following unforeseeable events: a concrete strike; forty
days of rain in February 2006 through March 2006; the Hus'

failure to make timely payments; the failure of Indymac (the Hus'
construction lender) to provide funds in a timely manner; and
Indymac's collapse.  Eric Nagano states he advanced construction
costs and worked hundreds of additional hours after funding ran
out.  The total cost of the Project was $689,000.00, but PMX and
Eric Nagano were only paid $411,856.09.  [Id. at ¶¶ 20-21.]
Eric Nagano emphasizes that the Hus did not sue him or PMX after
they moved into their "completed home in early 2008."  [Id. at ¶
22.]  Eric Nagano states that he had no knowledge of the flooding
that allegedly damaged the Hus' residence until they filed the Hu
Complaint.  [Id. at ¶ 23.]  Eric Nagano also emphasizes that
there is no contract between the Hus and either himself,
Hiroko Nagano, or HC.  [Id. at ¶ 18.]  Defendants point out that
Eric Nagano filed a Counterclaim in Hu v. Nagano seeking his out-
of-pocket and unreimbursed Project expenses.  [Mem. in Opp. at
5.]

        Defendants first argue that they reasonably expected
that the Policies would cover the claims in the Underlying
Proceedings and that this expectation was consistent with the
intentions of insurers and insureds in general at the time
Evanston issued the Policies.  [Id. at 10.]  Defendants state
that the Group Builders decision created "a public policy crisis"
and that the Hawai`i State Legislature responded with House Bill
924 in 2011.  [Id. at 11-12 (internal quotation marks omitted).]

14

House Bill 924, which became Act 83, enacted Haw. Rev.

Stat. § 431:1-217, which states, in pertinent part:

> For purposes of a liability insurance policy that
> covers occurrences of damage or injury during the
> policy period and that insures a construction
> professional for liability arising from
> construction-related work, **the meaning of the term
> "occurrence" shall be construed in accordance with
> the law as it existed at the time that the
> insurance policy was issued**.

§ 431:1-217(a) (emphasis added).

As Defendants point out, [Mem. in Opp. at 11,] House

Bill 924 and Act 83 state:

> The legislature further finds that the 2010
> decision of the Hawaii Intermediate Court of
> Appeals in <u>Group Builders, Inc. v. Admiral Ins.
> Co.</u>, 231 P.3d 67 (Haw. Ct. App. 2010), creates
> uncertainty in the construction industry, and
> invalidates insurance coverage that was understood
> to exist and that was already paid for by
> construction professionals.  Prior to the <u>Group
> Builders</u> decision, which held that commercial
> general liability policies do not cover bodily
> injury or property damage arising from
> construction defects, construction professionals
> entered into and paid for insurance contracts
> under the reasonable, good-faith understanding
> that bodily injury and property damage resulting
> from construction defects would be covered under
> the insurance policy.  It was on that premise that
> general liability insurance was purchased.

2011 Haw. Sess. Laws Act 83, § 1 at 232.  Act 83 also states that

its purpose is "to restore the insurance coverage that

construction industry professionals paid for and to ensure that

the good-faith expectations of parties at the time they entered

into the insurance contract are upheld."  <u>Id.</u> at 233.  Defendants

argue that Hawai`i state courts consider the declarations in Act 83 to be "pronouncement[s] of law that appl[y] to [] or govern[] cases involving the issue of whether an insurer should provide coverage for construction defect claims." [Mem in Opp. at 12 (citing Defs.' CSOF, Decl. of Steven R. Gray ("Gray Decl."), Exh. 3[8] at 81).] Defendants also argue that insurance underwriters intended CGL policies to cover construction defects. [Id. at 12-13 (quoting Gray Decl., Exh. 4[9] at 32-33).] Defendants therefore contend that they had a reasonable expectation that the Policies would cover construction defect claims, and they emphasize that Hawai`i case law and Act 83 require courts to honor the objectively reasonable expectations of the policyholders and the intended beneficiaries about the terms of an insurance policy. [Id. at 13-14.]

Defendants argue that: the Hus' alleged damages clearly constitute "property damage" as defined in the Policies; there is no dispute that the alleged damages took place within the territory covered by the Policies; and there is no dispute that

---

[8] Exhibit 3 is an excerpt of the transcript of an April 20, 2012 hearing in National Union First Insurance Co., et al. v. Sunset Height Hawaii, LLC, et al., Circuit Court of the First Circuit, State of Hawai`i, Civil No. 10-1-2184-10 ("National Union v. Sunset").

[9] Exhibit 4 is an excerpt of the transcript of a September 15, 2011 deposition in National Union v. Sunset. The deponent was Daniel F. Conway, the vice president of the AIG construction risk management division in 2003. His duties included managing the underwriting department. [Gray Decl., Exh. 4 at 21, 29.]

the alleged damages occurred during the period when one of the Policies was in force. [Id. at 15.] Defendants argue that Group Builders, WDC Venture, and Burlington are not binding on the issue whether the alleged construction defects are occurrences because § 431:1-217 requires that courts construe the term "occurrence" according to the law at the time the relevant policy was issued. [Id. at 15-16.] Defendants therefore argue that the applicable law in Hawai`i is the law as it existed in 2002, when PMX purchased the first policy. According to Defendants, the principal cases at that time were: Sentinel Insurance Co. v. First Insurance Co. of Hawai`i, Ltd., 76 Hawai`i 277, 290, 875 P.2d 894, 907 (1994); Hawaiian Holiday Macadamia Nut Co. v. Industrial Indemnity Co., 76 Hawai`i 166, 170-71, 872 P.2d 230, 234-35 (1994); Hurtig v. Terminix Wood Treating & Contracting Co., 67 Haw. 480, 480-81, 692 P.2d 1153, 1154 (1984); and Sturla, Inc. v. Fireman's Fund Insurance Co., 67 Haw. 203, 684 P.2d 960 (1984). [Id.]

Defendants argue that the Policies' definitions of "occurrence" are ambiguous because there are no definitions of the critical term "accident" in any of the Policies. Defendants therefore urge the Court to determine the meaning of "occurrence" according to Hawai`i case law as it existed in 2002. [Id. at 18.] Defendants assert that, in 2002, both Hawai`i state courts and the Ninth Circuit defined an accident according to whether

the insured intended or expected the harmful results of the
conduct at issue. [Id. at 18-19 (some citations omitted) (citing
Hawaiian Holiday, 76 Haw. at 170, 872 P.2d at 234; Baugh Constr.
Co. v. Mission Ins. Co., 836 F.2d 1164, 1169 (9th Cir. 1988)).]
Eric Nagano states that he did not intend or expect defects in
the construction of the Project, or any part thereof, nor did he
intend or expect to provide or install any defective materials or
supplies. Further, he did not know of any defects in the home
until the filing of Hu v. Nagano. [Nagano Decl. at ¶¶ 16, 23.]
Defendants emphasize that the Hu Complaint only alleges
intentional conduct in the fraud claims regarding the notice of
completion and Frederick Hu's owner-builder status. The breach
of contract and construction defect claims do not allege
intent.[10] Defendants therefore argue that the harm that the Hus
allege in the Hu Complaint was accidental. Defendants contend
that the Motion is premature because whether the Hus' alleged
damages were accidental is a material issue of fact that is not
appropriate for summary judgment. [Mem. in Opp. at 20-21.]

Defendants next argue that, because claims alleging
breach of contract can be occurrences, they are within the

---

[10] Defendants emphasize that the Hus themselves have
acknowledged that some or all of Defendants' alleged failures to
perform their obligations may have been unintentional. [Mem. in
Opp. at 21 (citing Gray Decl., Exh. 7 (Pltf. Frederic M.C. Hu's
Response to Def. PMX, Inc.'s First Request for Answers to
Interrogs. [Dated 5/24/12]) at ¶ 1).]

Policies' initial grant of coverage.  Further, Hawai`i case law
in 2002 held that construction defect claims could still be
occurrences even if the complaint also contained a breach of
contract claim.  Defendants argue that the Policies' inclusion of
breach of contract exclusions shows that the initial grants of
coverage included breach of contract claims.  [Id. at 22-23.]
Defendants argue that the Policies' breach of contract exclusions
only apply to breach of contract claims, not claims **"arising in
breach of contract**." [Id. at 24 (emphasis in original).]  Only
the two most recent HC Policies excluded claims arising out of
breach of contract.  Defendants emphasize that those policies
took effect after Defendants completed their work on the Project,
and Defendants assert that the exclusion is not retroactive.
Further, Defendants argue that Evanston's inclusion of that
language in the two most recent policies shows that Evanston
believed it needed to correct the prior exclusions which did not
apply to claims arising out of a breach of contract.  [Id. at 25-
26.]

        Further, Defendants argue that the Hu Complaint alleges
construction defect claims, which do not constitute claims
arising out of breach of contract.  Defendants point out that
prior correspondence from Evanston and its counsel acknowledged
that the Hus' claims "arise from alleged improper and deficient
workmanship during construction[.]"  [Id. at 26-27 (emphasis

19

omitted) (quoting Gray Decl., Exh. 8[11] at 2, Exh. 9[12]).]  Further,
the Hus were aware of many of their alleged breach of contract
claims, such as the failure to complete the Project within 220
days and the failure to commence within five days after the Hus
authorized construction to start, as far back as nine years
before filing Hu v. Nagano, but they neither terminated the
Construction Contract nor filed suit until they allegedly
suffered property damage because of faulty construction and after
they allegedly spent additional funds to repair faulty
construction.  [Id. at 27-28.]

   Defendants argue that the breach of contract exclusion
only excludes Count I.  Further, Count I only applies to PMX
because only PMX was a party to the Construction Contract.
Defendants argue that the other seven counts of the Hu Complaint
allege duties that are separate and apart from the Construction
Contract.  Defendants therefore assert that the sole breach of
contract claim, which the Hus assert against only PMX, does not
excuse Evanston from its duty to defend.  [Id. at 28-29.]

-------------------------------------------

   [11] Exhibit 8 is ten pages of a letter dated September 7,
2011 to Hiroko Nagano on letterhead of Lyons, Brandt, Cook &
Hiramatsu.  The end of the letter, including the signature page,
is not included in Exhibit 8.

   [12] Exhibit 9 is an e-mail dated April 6, 2011 to
claims@johnmullen.com from Marilyn Kirschenbaum, Senior Claims
Examiner - Construction Defect - with Markel West Insurance
Services, Evanston's claims service manager.

Defendants next argue that, under Hawai`i law, Evanston was required to look beyond the effect of the pleadings to determine whether the possibility of coverage existed, and Evanston was required to conduct a reasonable investigation of the facts of the case. [Id. at 30-31 (some citations omitted) (citing Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 414-15, 992 P.2d 93, 109-10 (2000)).] Defendants argue that Evanston failed to look beyond the pleadings, and Evanston denied coverage merely because the Hu Complaint did not contain explicit allegations of negligence. Defendants contend, based on California case law, that the mere fact that Defendants did not expect the alleged damages to occur is enough to trigger coverage. [Id. (discussing Montrose Chem. Corp. v. Super. Ct. (Canadian Universal), 861 P.2d 1153, 1164 (Cal. 1993)).] Defendants also argue that Evanston had a duty to investigate the Hu Complaint's claim that the other Defendants would assume PMX's obligations under the Construction Contract. Defendants contend that Evanston's conflicting characterizations of the claims in the Hu Complaint, as well as Evanston's actions while it provided the defense in Hu v. Nagano, are further indications of its bad faith denial of coverage. [Id. at 31-32.] Evanston failed to authorize the retention of experts for the defense, and Evanston has stated that it is unable to locate information about previous cases in which it provided coverage for Defendants against

similar construction defect claims. [Id. at 32 (citing Nagano Decl. at ¶ 13; Gray Decl., Exh. 11[13] at 1).]

Defendants urge the Court to deny the Motion because it exposes them to a risk of inconsistent verdicts. In Dairy Road, 92 Hawai`i at 417, 992 P.2d at 922, the Hawai`i Supreme Court recognized that facts which were uncontroverted at the time of tender may be significantly altered during discovery or trial. If the court in a coverage action concludes there is no coverage, but the court in an underlying action later concludes, based on new evidence, that there was a possibility of coverage, the insured would be barred from recovering post-trial attorneys' fees and costs from the insurer. This is fundamentally unfair to the insured, and therefore Dairy Road held that an insurer may not rely on extrinsic facts which are in dispute in the underlying action to deny coverage. [Id. at 33-34.] Defendants argue that Evanston has placed it at an even greater risk of inconsistent verdicts than the risk in Dairy Road because of Evanston's inability to locate information about prior covered construction defect claims and because Evanston authorized an investigation into whether Eric Nagano has a criminal history. Such an investigation is outside of the pleadings in Hu v. Nagano and cannot be considered to deny coverage. [Id. at 34 (citing

---

[13] Exhibit 11 is a June 5, 2012 letter to Defendants' counsel, Kevin Herring, Esq., from Evanston's counsel, Bradford Bliss, Esq.

Gray Decl., Exh. 12[14] at 2).]  Further, Evanston has put

Defendants in the prejudicial position where Defendants must

argue in this action that there is a possibility of misconduct,

but argue in Hu v. Nagano that they did not commit the same

alleged misconduct.  Defendants argue that this Court should stay

this action to mitigate the effect of this unfair burden.  [Id.

at 35-36.]

    Finally, Defendants argue that Evanston's breach of

their duty to defend constitutes a breach of the Policies, and

the breach bars Evanston from raising policy defenses to

coverage.  Defendants also argue that Evanston is estopped from

asserting defenses to coverage in the instant case because

Evanston's defense of Defendants in Hu v. Nagano has not been

vigorous and Defendants have been prejudiced.  [Id. at 34-35

(citing Utica Mut. Ins. Co. v. David Agency Ins., Inc., 327 F.

Supp. 2d 922, 928 (N.D. Ill. 2004)).]

    **B.    Evanston's Reply**

    In its Reply, Evanston first argues that § 431:1-217

does not preclude this Court from applying Group Builders and

similar cases to the instant case.  Evanston notes that Chief

United States District Judge Susan Oki Mollway has ruled that

House Bill 924, which resulted in the enactment of § 431:1-217,

---

[14] Exhibit 12 is a letter dated April 25, 2011 to Marilyn
Kirschenbaum from James Owens, Senior Adjuster and Investigator
with John Mullen & Company.

did not preclude her from granting summary judgment to the
insurer based on <u>WDC Venture</u> and <u>Burlington</u>. Chief Judge Mollway
noted that <u>Burlington</u> is controlling, and this district court
cannot choose to ignore it. Defendants argue that Chief Judge
Mollway's cases are directly on point and this Court should
follow her reasoning. [Reply at 3-8 (discussing <u>State Farm Fire
& Cas. Co. v. Vogelgesang</u>, 834 F. Supp. 2d 1026, 1037-38 (D.
Hawai`i 2011); <u>Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.</u>,
Civil No. 11-00515 SOM/KSC, 2012 WL 1492399, at *7-8 (D. Hawai`i
Apr. 26, 2012)).]

        Evanston also argues that this Court should disregard
Defendants' submissions from <u>National Union v. Sunset</u> because
those exhibits, and the information therein, are inadmissible
hearsay. Further, Defendants have not established that <u>National
Union v. Sunset</u> is similar to the instant case, nor have they
proven that the cited portions of those exhibits are
representative of all insurance underwriters or all courts
considering the issue of coverage for construction defects.
Evanston emphasizes that Chief Judge Mollway ruled that <u>National
Union v. Sunset</u> was not a parallel proceeding and that the
rulings therein were not relevant. Evanston urges this Court to
follow her analysis. [<u>Id.</u> at 8-10 (citing <u>Nordic PCL</u>, 2012 WL
1492399, at *16-17).]

As to Defendants' argument that breach of contract claims are excluded under the relevant Policies but claims arising from a breach of contract are not excluded, Evanston points out that Defendants did not provide any legal authority supporting this proposition.  Evanston also argues that such a distinction is untenable because it would not be possible to determine how closely related to a breach of contract claim another claim must be for the exclusion to apply.  Moreover, Evanston reiterates that all of the claims in the Underlying Proceedings are breach of contract claims.  [Id. at 11-12.]

As to Defendants' argument that only PMX was a party to the Construction Contract, Evanston argues that the Hus' breach of contract claims implicate all Defendants.  [Id. at 12.]  As to Defendants' argument that the Hus' claims arise from construction defects, Evanston argues that the defects allegedly occurred in the performance of the duties under the Construction Contract and therefore arise from a breach of contract.  Evanston argues that there is no alleged duty independent from the contractual duties in this case.  Thus, Evanston contends that Burlington bars coverage for such claims.  [Id. at 13-14.]

Evanston therefore urges the Court to grant summary judgment in its favor.

**DISCUSSION**

**I.   Applicable Law Regarding Insurance Contract Interpretation**

Federal jurisdiction in this case is based on diversity.  [Complaint at ¶ 2.]  This Court has recognized that:

> Federal courts sitting in diversity apply state substantive law and federal procedural law. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."); Zamani v. Carnes, 491 F.3d 990, 995 (9th Cir. 2007) ("Federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." (quotations omitted)).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011). In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Tracy v. USAA Cas. Ins. Co., Civil No. 11-00487 LEK-KSC, 2012 WL 928186, at *6 (D. Hawai`i Mar. 16, 2012) (some citations omitted).  This Court therefore looks to Hawai`i state law for the applicable principles of insurance contract interpretation.

**A.   General Principles under Hawai`i Law**

This Court has also recognized the following principles of Hawai`i insurance law as set forth by the Hawai`i Supreme Court:

> [I]nsurers have the same rights as individuals to limit their liability and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy. As such, insurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended. Moreover, every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.
>
> Nevertheless, adherence to the plain language and literal meaning of insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

> Guajardo v. AIG Hawai`i Ins. Co., Inc., 118 Hawai`i 196, 201-02, 187 P.3d 580, 585-86 (2008) (alteration in Guajardo) (quoting Dairy Rd. Partners v. Island Ins. Co., 92 Hawai`i 398, 411-12, 992 P.2d 93, 106-07 (2000)). The Hawai`i Supreme Court has also stated: "[t]he objectively reasonable expectations of [policyholders] and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations. These

'reasonable expectations' are derived from the
insurance policy itself . . . ." <u>Del Monte Fresh
Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.</u>,
117 Hawai`i 357, 368, 183 P.3d 734, 745 (2007)
(citations and some quotation marks omitted) (some
alterations in original).

<u>U.S. Fire Ins. Co. v. Estate of Campbell</u>, Civil No. 11-00006

LEK-KSC, 2011 WL 6934566, at *4 (D. Hawai`i Dec. 30, 2011).

**B.    <u>Duty to Defend & Duty to Indemnify</u>**

This district court has summarized the following

relevant aspects of Hawai`i law regarding the duty to defend and

the duty to indemnify.

> The burden is on the insured to
> establish coverage under an insurance policy.
> <u>See</u> <u>Sentinel Ins. Co. v. First Ins. Co. of
> Haw.</u>, 76 Haw. 277, 291 n.13, 875 P.2d 894,
> 909 n.13 (1994) (as amended on grant of
> reconsideration); <u>Crawley v. State Farm Mut.
> Auto. Ins. Co.</u>, 90 Haw. 478, 483, 979 P.2d
> 74, 79 (App. 1999). The insurer has the
> burden of establishing the applicability of
> an exclusion. <u>See</u> <u>Sentinel</u>, 76 Haw. at 297,
> 875 P.2d at 914.
>
> The duty to indemnify is owed "for any
> loss or injury which comes within the
> coverage provisions of the policy, provided
> it is not removed from coverage by a policy
> exclusion." <u>Dairy Road Partners v. Island
> Ins.</u>, 92 Haw. 398, 413, 922 P.2d 93, 108
> (2000). The obligation to defend an insured
> is broader than the duty to indemnify. The
> duty to defend arises when there is any
> potential or possibility for coverage.
> <u>Sentinel</u>, 76 Haw. at 287, 875 P.2d at 904;
> <u>accord</u> <u>Haole v. State</u>, 111 Haw. 144, 151, 140
> P.3d 377, 384 (2006) ("if there is no
> potential for indemnification, then no duty
> to defend will arise"). However, when the
> pleadings fail to allege any basis for
> recovery under an insurance policy, the

28

insurer has no duty to defend. <u>Pancakes of Hawaii, Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 291, 994 P.2d 83, 88 (Haw. Ct. App. 1997)). In other words, for [the insurer] to have no duty to defend, it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the policy. <u>See</u> <u>Tri-S Corp. v. W. World Ins. Co.</u>, 110 Haw. 473, 488, 135 P.3d 82, 97 (2006).

Estate of Rogers [<u>v. Am. Reliable Ins. Co.</u>, Civil No. 10-00482 SOM/RLP], 2011 WL 2693355, at *4 [(D. Hawai`i July 8, 2011)]. The Hawai`i Supreme Court has emphasized that the duty to defend applies even if the possibility of coverage is "remote". <u>Tri-S Corp. v. W. World Ins. Co.</u>, 110 Hawai`i 473, 488, 135 P.3d 82, 97 (2006). Further, "[a]ll doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured." <u>Id.</u>

<u>Id.</u> at *5.

## II.   <u>Whether There is a Covered Occurrence</u>

As previously noted, the Policies impose: a duty to indemnify for damages that the insureds are legally obligated to pay because of covered bodily injury or property damage; and a duty to defend against any suit seeking those damages. The Policies, however, only provide coverage for bodily injury and property damage caused by an occurrence that takes place within the coverage territory. <u>See</u> *supra* pg. 9. The central dispute in this case is whether the damages that the Hus seek were caused by an occurrence within the meaning of the Policies. Evanston urges the Court to follow <u>Group Builders</u>, and Defendants argue that § 431:1-217(a) and Act 83 preclude the Court from applying <u>Group</u>

29

<u>Builders</u>.

The Court agrees with Defendants that, pursuant to § 431:1-217(a), the Court cannot construe the meaning of the term "occurrence" based on the holding in <u>Group Builders</u> because the ICA decided <u>Group Builders</u> on May 19, 2010. Thus, it was not in existence when Evanston issued the Policies, the most recent of which took effect on January 18, 2010. [Complaint, Exh. H at 2.] In order to construe the term occurrence, this Court must determine what the state of Hawai`i insurance law was at the time Defendants purchased the policy at issue.

According to the Hu Complaint, on or about July 1, 2003, the Hus provided Eric Nagano and PMX a letter authorizing the commencement of construction. Pursuant to the Construction Contract, construction was to commence within five days afer receipt of that letter, and construction was to be completed within 220 days after the date construction was authorized to commence. [Hu Complaint at ¶¶ 12.b., 12.c, 14.] The Hus allege that Defendants breached the Construction Contract by failing to commence construction within five days and by failing to complete construction withing 220 days. [<u>Id.</u> at ¶¶ 56.a, 56.b.] The alleged commencement breach would have occurred in July 2003, during the period of the first PMX policy, and the completion breach would have occurred in February 2004, during the period of the second PMX policy. These are the earliest alleged

occurrences which Defendants contend trigger Evanston's duty to defend and duty to indemnify. The remainder of Defendants' conduct described in the Hu Complaint occurred during the construction, which the Hus allege commenced in approximately October 2004, until approximately June 29, 2008, when Eric Nagano allegedly informed the Hus that Defendants lacked the funds to complete the Project. [<u>Id.</u> at ¶¶ 16, 38.] These alleged actions occurred during the periods of the second PMX policy and several of the HC Policies.

Under the facts of this case, the Court concludes that the operative case law is that which existed at the time Evanston issued the first PMX policy, which took effect on November 11, 2002. [Complaint, Exh. A at 2.] Thus, even <u>Burlington</u> is not applicable because the Ninth Circuit decided <u>Burlington</u> in 2004. Further, Chief Judge Mollway's cases discussing House Bill 924, Act 83, and Haw. Rev. Stat. § 431:1-217(a) are distinguishable because they addressed policies to which <u>Burlington</u> applied. <u>See</u> <u>Vogelgesang</u>, 834 F. Supp. 2d at 1037-38 (concluding that House Bill 924 did not affect the ruling because nearly all of the cases that <u>Group Venture</u> relied upon "predate 2006, the year State Farm issued to Defendants the first policy that could potentially provide coverage in this case. None of these cases suggests that the claims associated with the Okudas' contract with Defendants warrants coverage." (citing <u>Burlington Ins. Co.</u>

v. United Coatings Mfg. Co., 518 F. Supp. 2d 1241, 1249 (D.
Hawai`i 2007) (reading WDC Venture, its progeny, and Burlington
Ins. Co. v. Oceanic for the proposition that, "under Hawaii law,
contract and contract-based tort claims are not within the scope
of CGL policies") (internal quotation marks omitted))); Nordic
PCL, 2012 WL 1492399, at *2, *7 (in action involving policies
issued in 2007, noting that the court was "clearly bound by
Burlington, in which the Ninth Circuit construed Hawaii law as
not providing for insurance coverage for contract related
claims").

        This Court agrees with the reasoning in Vogelgesang,
which did not apply Group Builders, but considered the state and
federal cases that Group Builders relied upon.  834 F. Supp. 2d
at 1037-38.  Further, as stated in Nordic PCL:

> Even if this statute ostensibly nullifies Group
> Builders by "restoring" pre-Group Builders law,
> the statute does not purport to nullify any
> decision preceding Group Builders.  The Ninth
> Circuit decided Burlington in 2004, so it cannot
> be said to have created new confusion or to be
> suddenly upsetting insureds' settled expectations.
> Nor does the legislature address the effect of
> other cases relied on by the ICA in Group
> Builders.  See Burlington Ins. Co. v. United
> Coatings Mfg. Co., 518 F. Supp. 2d 1241 (D. Haw.
> 2007); WDC Venture v. Hartford Accident & Indem.
> Co., 938 F. Supp. 671 (D. Haw. 1996); Hawaiian
> Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76
> Hawai`i 166, 872 P.2d 230 (1994).  Those cases
> predate the effective date of the CGL Policy.

2012 WL 1492399, at *11.

        Similarly, this Court notes that many of the cases that

the ICA cited in <u>Group Builders</u> and that the Ninth Circuit cited in <u>Burlington</u> predated the Policies in the instant case.  In particular, the Ninth Circuit noted that the holding in <u>Burlington</u> "is consistent with the line of cases from the District of Hawaii that hold that contract and contract-based tort claims are not within the scope of CGL policies under Hawaii law."  383 F.3d at 949 (discussing <u>WDC Venture v. Hartford Accident & Indem. Co.</u>, 938 F. Supp. 671 (D. Hawai`i 1996); <u>CIM Ins. Corp. v. Masamitsu</u>, 74 F. Supp. 2d 975 (D. Haw. 1999); <u>CIM Ins. Corp. v. Midpac Auto Ctr., Inc.</u>, 108 F. Supp. 2d 1092 (D. Haw. 2000)).  In <u>Group Builders</u>, the ICA noted that <u>Burlington</u> relied upon <u>Francis v. Lee Enterprises, Inc.</u>, 89 Hawai`i 234, 244, 971 P.2d 707, 717 (1999), <u>Dairy Road Partners v. Island Insurance Co.</u>, 92 Hawai`i 398, 417, 992 P.2d 93, 112 (2000), <u>Bayudan v. Tradewind Insurance Co.</u>, 87 Hawai`i 379, 387, 957 P.2d 1061, 1069 (1998), <u>Hawaiian Holiday Macadamia Nut Co. v. Industrial Indemnity Co.</u>, 76 Hawai`i 166, 170, 872 P.2d 230, 234 (1994), and <u>AIG Hawaii Hawai`i Insurance Co. v. Estate of Caraang</u>, 74 Haw. 620, 635-36, 851 P.2d 321, 329 (1993).  <u>Group Builders</u>, 123 Hawai`i at 146-47, 231 P.3d at 71-72.  All of these cases predate the Policies in this case.  In light of the state and federal case law that the ICA relied upon in <u>Group Builders</u> and that the Ninth Circuit relied upon <u>Burlington</u>, this Court concludes that the holdings in <u>Group Builders</u> and <u>Burlington</u> are

also accurate statements of Hawai`i case law regarding the scope

of occurrences for purposes of CGL policies in 2002.[15]  Further,

this Court agrees with the ICA's analysis and the Ninth Circuit's

analysis.  As stated in Burlington and quoted in Group Builders,

> Though certain allegations . . . are couched
> in terms of negligence, it is undisputed that
> Oceanic had entered into a contract to construct a
> home for the homeowners.  The counterclaim then
> alleges that Oceanic breached its *contractual duty*
> by constructing a residence "substantially
> inferior to the standard of care and quality which
> had been agreed."  Other than a breach of that
> contractual duty, the facts in this case do not
> reflect a breach of an independent duty that would
> otherwise support a negligence claim.  In Hawaii,
> an occurrence "cannot be the expected or
> reasonably foreseeable result of the insured's own
> intentional acts or omissions."  Hawaiian Holiday
> Macadamia Nut [Co. v. Indus. Indem. Co., 76
> Hawai`i 166, 170,] 872 P.2d [230,] 234 [(1994)]
> (citing AIG Hawaii [Hawai`i] Ins. Co. [v. Estate
> of Caraang, 74 Haw. 620, 635-36,] 851 P.2d [321,]
> 329 [(1993)]).  If Oceanic breached its
> contractual duty by constructing a sub-standard
> home, then facing a lawsuit for that breach is a
> reasonably foreseeable result.

Group Builders, 123 Hawai`i at 147, 231 P.3d at 72 (alterations

in Group Builders) (emphasis in original) (quoting Burlington,

383 F.3d at 948).

---

[15] This Court acknowledges that another district judge in
this district has rejected an insurer's argument that "Group
Builders changed nothing about Hawaii insurance law, such that
rolling back to 'the law that existed at the time that the
insurance policy was issued' would nonetheless lead to the same
result that was reached in Group Builders."  Nat'l Union Fire
Ins. Co. of Pittsburgh, Pa. v. Simpson Mfg. Co., 829 F. Supp. 2d
914, 922 n.13 (D. Hawai`i 2011) (citation omitted).  This Court,
however, respectfully disagrees.

This Court also notes that the defendants in _Nordic PCL_ relied on the same Hawai`i cases that Defendants urge this Court to follow in the instant case: _Sentinel Insurance Co. v. First Insurance Co. of Hawai`i, Ltd._, 76 Hawai`i 277, 875 P.2d 894 (1994); _Hawaiian Holiday Macadamia Nut Co. v. Industrial Indemnity Co._, 76 Hawai`i 166, 872 P.2d 230 (1994); _Hurtig v. Terminix Wood Treating & Contracting Co._, 67 Haw. 480, 692 P.2d 1153 (1984); and _Sturla, Inc. v. Fireman's Fund Insurance Co._, 67 Haw. 203, 684 P.2d 960 (1984). _Nordic PCL_, 2012 WL 1492399, at *9-10. Chief Judge Mollway declined to follow those cases, noting that insofar as they "preceded _Burlington_ and _Group Builders_ . . . it is fair for this court to assume that the Ninth Circuit and the ICA took those Hawaii Supreme Court cases into account." _Id._ at *10. This Court also declines to follow _Sentinel_, _Hawaiian Holiday_, _Hurtig_, and _Sturla_, to the extent that they are inconsistent with _Group Builders_ and _Burlington_ because this Court has concluded that the holdings in _Builders_ and _Burlington_ are accurate descriptions of the law as it existed in Hawai`i in 2002.

***

This Court FINDS that all of the claims in the Hu Complaint are either contract claims or claims that arise from the contract. Pursuant to the Hawai`i case law regarding insurance, as it existed when Defendants first purchased the

Policies, this Court CONCLUDES that the actions which form the basis of the Hus' contract claims and contract-based claims are not occurrences within the meaning of the Policies. Insofar as the Hus' claims are not within the Policies' initial grant of coverage, this Court need not reach the issue whether the breach of contract exclusions in the Policies apply. This Court therefore CONCLUDES that Evanston does not owe Defendants a duty to defend or a duty to indemnify them against the Hus' claims.

## CONCLUSION

On the basis of the foregoing, Evanston's Motion for Summary Judgment, filed March 29, 2012, is HEREBY GRANTED. The Court DIRECTS the Clerk's Office to enter judgment in favor of Evanston. After the entry of judgment, Evanston may file a motion seeking "its attorneys' fees and costs associated with the prosecution of this action[.]" [Complaint at pg. 18.] The magistrate judge will consider the motion in the normal course and issue his findings and recommendation.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, August 31, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**EVANSTON INSURANCE COMPANY V. ERIC NAGANO, ET AL; CIVIL NO. 11-00666 LEK-KSC; ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**